# In the United States Court of Federal Claims

No. 16-1475C

(Filed Under Seal: March 14, 2017)

(Reissued: March 17, 2017)

|  |  |  |
|---|---|---|
| **MERCOM, INC.,** | ) | Post-award bid protest; challenge to |
|  | ) | agency's technical rating of protester's |
| **Plaintiff,** | ) | proposal |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| **UNITED STATES,** | ) |  |
|  | ) |  |
| **Defendant.** | ) |  |
|  | ) |  |

H. Todd Whay, The Whay Law Firm, Sterling, Virginia for plaintiff.

P. Davis Oliver, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C. for defendant. With him on the briefs were Joyce R. Branda and Chad A. Readler, Acting Assistant Attorney Generals, Civil Division, and Robert E. Kirschman, Jr., Director, and Elizabeth M. Hosford, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**[1]

LETTOW, Judge.

This post-award bid protest arises from a solicitation by the United States Department of the Navy, Space and Naval Warfare Systems Center Atlantic ("Navy" or "agency") for commercial, off-the-shelf command and control equipment, software, and hardware licenses and maintenance. The Navy anticipated making multiple awards for indefinite delivery/indefinite quantity ("IDIQ"), firm fixed-price contracts from this solicitation, and ultimately issued 21 contracts. Mercom, Inc. ("Mercom"), an incumbent contractor and offeror on the solicitation, was not among the awardees because its proposal received a rating of "Unacceptable" on a technical sub-factor specified in the solicitation. Mercom initially protested the Navy's award

---

[1]Because this opinion and order might have contained confidential or proprietary information within the meaning of Rule 26(c)(1)(G) of the Rules of the United States Court of Federal Claims ("RCFC") and the protective order entered in this case, it was initially filed under seal. The parties were requested to review this decision and provide proposed redactions of any confidential or proprietary information. No redactions were requested.

decision at the Government Accountability Office ("GAO"), alleging that the agency failed to follow the terms of the solicitation and that the "Unacceptable" rating assigned to Mercom's proposal was unreasonable.  On October 25, 2016, GAO denied Mercom's protest on all grounds.  Two weeks later, Mercom filed a bid protest in this court.

Mercom seeks to permanently enjoin the Navy from taking any action with regard to the solicitation until it awards a contract to Mercom or reevaluates Mercom's proposal and issues a new best value determination.  In its protest, Mercom asserts that the Navy unreasonably assigned an "Unacceptable" rating to the technical support services sub-factor of the solicitation and failed to follow the terms of the solicitation by rolling up the "Unacceptable" sub-factor rating to the proposal as a whole.  Pending before the court are the parties' cross-motions for judgment on the administrative record.  A hearing was held on February 17, 2017.

For the reasons stated, the court has concluded that plaintiff's motion should be denied and the government's motion should be granted.

## FACTS[2]

*A. The Agency's Mission*

The Space and Naval Warfare Systems Center Atlantic, also referred to as "SPAWARSYSCEN ATLANTIC" and "SSC LANT," is a Navy Working Capital Fund ("NWCF") Engineering Center.  AR 7-258.[3]  The primary mission of the agency is "to enable knowledge superiority for the Joint Warfighter through the development, acquisition, and life cycle support of effective, integrated Command, Control, Communications, Computers, Combat Systems, Intelligence, Surveillance, and Reconnaissance (C5ISR) capabilities." *Id.*  The agency delivers "speed-to-capability" in support of the Department of Defense and the Navy to fulfill this mission.  *Id.*

---

[2]The recitations that follow constitute findings of fact by the court drawn from the administrative record of the procurement filed pursuant to RCFC 52.1(a).  *See Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005) (specifying that bid protest proceedings "provide for trial on a paper record, allowing fact-finding by the trial court").

[3]Citations to the administrative record refer to the record as filed on November 22, 2016.  The record is paginated sequentially and is also divided into tabs.  In citing to the administrative record, the court will first designate the tab, followed by the page number, *e.g.*, AR 7-258 refers to page 258, which is located in tab 7 of the record.

*B. Solicitation No. N65236-13-R-0016*

On January 8, 2015, the agency issued its request for proposals ("RFP") (solicitation number N65236-13-R-0016) for commercial, off-the-shelf command and control equipment and related services. AR Tab 6.[4] The RFP contemplates multiple IDIQ contract awards with a cumulative value not to exceed $750 million. AR 6-152; -177. The contract period contemplated by the solicitation is five years, with a one-year base period and four option years. AR 6-152.

The purpose of the contracts is to "provid[e] Commercial Off-The-Shelf (COTS) equipment to [the Department of Defense] and [f]ederal [c]ivilian [a]gencies that will meet existing and future mission support requirements." AR 7-258. The solicitation covers commercial, off-the-shelf command and control equipment, as well as software and hardware licenses and maintenance associated with the equipment "not available via mandatory sources." *Id.* This includes license and maintenance renewals, warranties, and "associated incidental services." *Id.*

The evaluation criteria in Section M of the RFP stated that the agency would conduct a best value analysis and award the contracts based on an assessment of five factors: (A) reseller relationships/agreements, (B) technical capability, (C) past performance, (D) small business participation, and (E) price. *See* AR 7-286 to -91.[5] Factor (A) contained two sub-factors, A1-reseller/purchasing agreements and A2-Original Equipment Manufacturers (OEM) relationships. AR 7-287 to -88. Factor (B) also contained two sub-factors, B1-systems and equipment and B2-technical support services. AR 7-289. The agency told offerors that the non-price evaluation factors were more important than price. AR 7-287. Among the non-price factors and sub-factors, factor (A) was more important than factor (B), sub-factor A2 was more important than sub-factor A1, sub-factor B1 was more important than sub-factor B2, and factors (C) and (D) would be evaluated on an Acceptable/Unacceptable basis. AR 7-287 to -91.

Sub-factor B2 is specifically at issue in Mercom's protest. *See* Pl.'s Mot. for Judgment Upon the Administrative Record ("Pl.'s Mot.") at 1, ECF No. 19. To demonstrate technical capability under factor (B), offerors were required to "identify current contracts which are relevant to the requirements of th[e] [RFP]" and "verify the[ir] specific demonstrated experience in performing the work identified." AR 8-303. Specifically with regard to sub-factor B2, the offerors needed to demonstrate experience in: (1) "[p]erforming maintenance, overhaul, troubleshooting and repair of system(s) and/or equipment" (sub-sub-factor B2.1), and (2) "[c]onfiguration, integration, packaging, kitting and installation of equipment" (sub-sub-factor B2.2). AR 8-304. To demonstrate this experience, the offerors were required to submit information regarding current and relevant contracts that encompassed work performed within

---

[4]The solicitation was amended on February 10, 2015, February 13, 2015, and March 12, 2015. *See* AR Tabs 7-9. Tab 7 contains the most updated version of Section M, which explains evaluation criteria and basis for awards, and Tab 8 contains the most updated version of Section L, which includes clauses incorporated by reference and guidelines for proposals.

[5]A sixth factor, business practices, was included in the original solicitation but was deleted in the first amendment to the solicitation. *See* AR 6-229; 7-287 to -91.

3

the last five years of a similar nature and scope to the requirements of the solicitation. AR 8-303. The solicitation requested at least four but no more than ten contract references with a cumulative invoiced value of at least $30 million. Id. Failing to include the minimum number of current and relevant contract references would result in an "Unacceptable" rating for factor (B) and the proposal would be rejected and rendered ineligible for a contract award. AR 7-289. The Navy also reserved the right to consider other references and information not provided by the offerors. Id.

The Navy assessed the offerors' proposals under factor (B) in two respects: (1) "[d]epth of experience (the frequency in which an offeror has completed same or similar tasks across the range of tasks within the element)," and (2) "[b]readth of experience (the multiplicity or variety of programs and/or projects [where] an offer[or] has completed same or similar tasks and the range of tasks within the element)." AR 7-289. Sub-factors B1 and B2 of the proposals were assigned an adjectival rating of "Outstanding," "Good," "Acceptable," "Marginal," or "Unacceptable" based on "an overall assessment of strengths, weaknesses, deficiencies, and risk for the entire sub[-]factor." AR 3-101; 7-289. The ratings generally correspond to the following assessments:

| Color | Rating | Description |
| --- | --- | --- |
| Blue | Outstanding | Proposal meets requirements and indicates an exceptional approach and understanding of the requirements. Strengths far outweigh any weaknesses. Risk of unsuccessful performance is very low. |
| Purple | Good | Proposal meets requirements and indicates a thorough approach and understanding of the requirements. Proposal contains strengths which outweigh any weaknesses. Risk of unsuccessful performance is low. |
| Green | Acceptable | Proposal meets requirements and indicates an adequate approach and understanding of the requirements. Strengths and weaknesses are offsetting or will have little or no impact on contract performance. Risk of unsuccessful performance is no worse than moderate. |
| Yellow | Marginal | Proposal does not clearly meet requirements and has not demonstrated an adequate approach and understanding of the requirements. The proposal has one or more weaknesses which are not offset by strengths. Risk of unsuccessful performance is high. |
| Red | Unacceptable | Proposal does not meet requirements and contains one or more deficiencies. Proposal is unawardable. |

AR 3-101. Factor (B) was then assigned an adjectival rating on the same scale based on the agency's assessment of the two sub-factors. See AR 7-289.

The RFP also instructed offerors that their non-price proposals must be "sufficient to enable evaluators to make a thorough and complete evaluation, and to arrive at a sound determination as to whether the requirements of th[e] solicitation are understood and satisfied." AR 8-301. To accomplish this goal, offerors were to be "sufficiently specific, detailed, and complete to demonstrate clearly and fully that [they] ha[d] a thorough understanding of the requirements for, and technical problems inherent in, the requirements of the solicitation." Id. In this respect, the solicitation warned:

4

> A concise and comprehensive proposal is desired. Organization, clarity, accuracy of information, relevance, and completeness are of prime importance. Statements such as "will comply," or "noted and understood" without supporting narrative to define compliance are not acceptable. Cursory responses or responses which merely reiterate or reformulate solicitation language will not be considered as satisfying the requirements of the RFP or as demonstrating the ability to perform.

*Id.*

A proposal that did not meet the requirements as stated in the RFP would be deemed unacceptable and could be "rejected without further evaluation." AR 7-287. An "Unacceptable" rating for any non-price factor would result in an "Unacceptable" rating for the proposal as a whole, rendering the offeror ineligible for a contract award. *Id.*

### C. Evaluation of Mercom's Proposal

The offerors' proposals were evaluated by a source selection team assembled by the Navy, consisting of the Source Selection Authority ("SSA"), the Source Selection Advisory Council ("SSAC"), and the Source Selection Evaluation Board ("SSEB"), among other procurement officials. AR 2-8. The SSEB evaluated each proposal and prepared a narrative report of its evaluations, the SSAC reviewed the SSEB's analysis of each proposal as it developed its comparative reports, and the SSA made the ultimate best-value assessments and source selection decisions. AR 2-8 to -10.

The SSA issued its source selection decision on June 1, 2016, in which Mercom received an overall technical rating of "Unacceptable" for factors (A) and (B). AR 20-1047. In light of this rating, the SSA deemed Mercom ineligible to receive a contract award. *See* AR 21-1051.

The SSEB specifically evaluated Mercom's proposal as follows:

| FACTORS | Factor A Color/Rating | Factor B Technical Capability Color/Rating | Factor C Acceptable/ Unacceptable | Factor D Acceptable/ Unacceptable |
|---|---|---|---|---|
| A: Reseller Relationships / Agreements | Outstanding | | | |
| B: Technical Capability | | Unacceptable | | |
| C: Past Performance | | | Acceptable | |
| D: Small Business Participation | | | | Acceptable |
| Overall Ratings | Outstanding | Unacceptable | Acceptable | Acceptable |

AR 18-772. To arrive at the "Unacceptable" rating for factor (B), the SSEB evaluated sub-factors B1 and B2 as follows:

| TECHNICAL CAPABILITY SUBFACTORS | Adjectival Rating |
|---|---|
| B1 – Systems and Equipment (PWS Para 3.1) | Good |
| B2 – Technical Support Services (PWS Para 3.3) | Unacceptable |
| OVERALL TECHNICAL CAPABILITY RATING | Unacceptable |

5

AR 18-868. Mercom had submitted ten contract references for factor (B), all of which met the currency and relevancy criteria of the RFP. AR 18-867. In evaluating these references, the SSEB determined that Mercom "failed to demonstrate any technical capability/experience as it pertains to the [s]ub[-f]actor B2 requirements." AR 18-871.

The SSEB identified two "[s]ignificant [w]eaknesses" in Mercom's proposal respecting sub-factor B2. AR 18-869 to -71.[6] First, "Mercom failed to document/substantiate a single instance in any of [its] submitted contract references of demonstrating experience in performing maintenance, overhaul, troubleshooting and repair of system(s) and/or equipment" as required by sub-sub-factor B2.1 of the RFP. AR 18-869. The SSEB considered that Mercom's proposal "parroted" the requirements of the solicitation and used generalized, conditional language (*i.e.*, "Mercom *may* provide . . ."; "*if authorized* by the contracting officer . . .") to explain its previous contract work rather than providing a detailed narrative describing the company's depth of experience in these regards. *Id.* (emphasis added). The SSEB interpreted this language as describing Mercom's "technical approach" for each contract rather than the work it had actually performed. *Id.* Without the requisite detail describing the services actually provided under the referenced contracts, the SSEB could not determine the depth and breadth of the work Mercom performed and therefore could not be "assured that [Mercom] c[ould] perform the requirements as defined in [the solicitation], which may have a negative impact on cost, schedule and performance." *Id.* Second, Mercom also "failed to document a single instance in any of [its] submitted contract references of demonstrating experience in performing configuration, integrations, packaging, kitting and installation of equipment," which was required by sub-sub-factor B2.2 of the solicitation. AR 18-870. Similar to the first significant weakness, the SSEB adjudged that Mercom had used vague, conditional language to describe its past contracts rather than provide a detailed explanation of the depth and breadth of its experience. *Id.*

In light of both significant weaknesses, "the SSEB determined that . . . Mercom's lack of demonstrated experience in performing the relevant technical services required in [s]ub[-]factor B2 resulted in increased risk of unsuccessful contract performance at the delivery order level to an unacceptable level." AR 18-870 to -71. Therefore, as Mercom did not meet the requirements of the solicitation for sub-factor B2, the SSEB assigned Mercom's proposal a rating of "Unacceptable" for the sub-factor. AR 18-867. The SSEB then assigned an overall "Unacceptable" rating to factor (B) because sub-factor B2 was deemed not to meet the requirements of the solicitation. *Id.* Finally, in accord with the solicitation, the SSEB assigned Mercom's proposal an overall technical rating of "Unacceptable" for factors (A) and (B) because the proposal merited an "Unacceptable" rating for a "non-price factor," *i.e.*, factor (B). AR 18-865. Specifically, Mercom's proposal was deemed "Unacceptable" because it "[did] not meet the requirements, [did] not indicate an adequate understanding of the requirements[,] and the risk of unsuccessful performance [was] high." *Id.*

In its review of the SSEB's analysis, the SSAC upheld the "Unacceptable" technical

---

[6]The solicitation defined "[s]ignificant [w]eakness" as "a flaw [in the proposal] that *appreciably* increases the risk of unsuccessful contract performance." AR 3-102 (emphasis in original).

rating for Mercom's proposal. AR 19-1005. The SSAC reiterated that the proposal contained significant weaknesses with regard to sub-factor B2 because Mercom "failed to demonstrate any experience" in technical support services as required by the solicitation. AR 19-1006. The SSAC also noted that Mercom "provided high-level summaries concerning the types of services that [it] provides" and "largely relied upon generalized statements that were repeated for each contract reference," representing a "material failure to meet the requirements of the solicitation." *Id.* In combination, the significant weaknesses of sub-factor B2 of Mercom's proposal were deemed to "constitute a deficiency and an 'Unacceptable' adjectival rating" for factor (B) overall. *Id.*[7]

Relying on the analyses of the SSEB and the SSAC, the SSA ultimately determined in its best value assessment that Mercom "failed to meet the minimum solicitation requirements for Factor B," rendering the entire proposal "Unacceptable" and ineligible to receive a contract award. AR 20-1048; 21-1051. Mercom timely requested a debriefing from the Navy to ascertain why it was not selected for an award, and the Navy reiterated the analysis of sub-factor B2 from the SSEB and SSAC reports. *See* AR 23-1069 to -72.

### D. Mercom's GAO Protest

Mercom timely filed a protest at GAO on July 20, 2016, and filed a supplemental protest on July 22, 2016. AR Tabs 26-27. In its protest, Mercom alleged that the Navy failed to follow the terms of the solicitation for rejecting proposals with "Unacceptable" factor ratings, failed to properly weigh the factors being applied to Mercom's proposal in line with the terms of the solicitation, and unreasonably assigned a rating of "Unacceptable" to sub-factor B2. AR 26-1126 to -28; 27-1152 to -58. On October 25, 2016, GAO denied Mercom's protest. AR 29-1193. GAO agreed with the agency that Mercom's proposal failed to satisfy the requirements of the solicitation for sub-factor B2 by failing to provide sufficient detail in the contract references to show the depth and breadth of Mercom's experience. AR 29-1196 to -97. GAO concluded that it was reasonable for the Navy to assign an "Unacceptable" rating to sub-factor B2, and in turn to assign an "Unacceptable" rating to factor (B) and to Mercom's proposal as a whole. AR 29-1197.

### E. Mercom's Protest in This Court

On November 8, 2016, Mercom filed its protest in this court. *See* Compl. In its complaint, Mercom asserts four counts regarding the Navy's procurement: (1) "the agency unreasonably assigned a rating of unacceptable under sub[-]factor B2" because Mercom's proposal demonstrated work it actually performed under the contracts provided, (2) "the agency unreasonably assigned a rating of Unacceptable under sub[-]factor B2" because Mercom's proposal demonstrated the depth and breadth of its work as required by the solicitation, (3) "the agency failed to follow the solicitation's terms regarding the rejection of proposals for a rating of

---

[7]The solicitation defined "[d]eficiency" as "a material failure of a proposal to meet a [g]overnment requirement or a *combination of significant weaknesses* in a proposal that increases the risk of unsuccessful contract performance to an unacceptable level." AR 3-102 (emphasis in original).

7

unacceptable," and (4) "the agency's best value determination was unreasonable." Compl. ¶¶ 30-59.  Contemporaneously with its complaint, Mercom filed an application for a temporary restraining order and a motion for preliminary injunction.  Pl.'s Appl. for TRO and Mot. for Prelim. Inj., ECF No. 4.  During a hearing on November 14, 2016, "the parties represented that the government has agreed to voluntarily stay performance on the contract at issue until the resolution of plaintiff's protest."  Order of Nov. 14, 2016, ECF No. 14.  The court therefore denied the application for a temporary restraining order and the motion for preliminary injunction as moot.  *Id.*

Pursuant to the court's scheduling order, the government promptly filed the administrative record, ECF No. 18.  The parties' cross-motions for judgment on the administrative record have been submitted and fully briefed, and were addressed at a hearing.

## JURISDICTION

Pursuant to the Tucker Act, this court has jurisdiction to "render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."  28 U.S.C. § 1491(b)(1), added by the Administrative Dispute Resolution Act, Pub. L. No. 104320, § 12, 110 Stat. 3870, 3874 (Oct. 19, 1996); *see also Systems Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1380-81 (Fed. Cir. 2012).  Accordingly, the court has jurisdiction over this protest.

## STANDARDS FOR DECISION

The Administrative Procedure Act ("APA"), specifically 5 U.S.C. § 706, governs the court's review of an agency's contract award.  *See* 28 U.S.C. § 1491(b)(4) ("In any action under this subsection, the courts shall review the agency's decision pursuant to the standards set forth in section 706 of title 5.").  A court may set aside an agency decision that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  The "arbitrary and capricious" standard is "highly deferential," *see Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000), and the court may not "substitute its judgment for that of the agency," *Keeton Corrs., Inc. v. United States*, 59 Fed. Cl. 753, 755 (2004) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated in part by Califano v. Sanders*, 430 U.S. 99, 105 (1977)), *recons. denied*, 60 Fed. Cl. 251 (2004).

Notwithstanding this deferential standard, the court may set aside a procurement action if "(1) the procurement official's decision lacked a rational basis; or (2) the procurement proce[ss] involved a violation of regulation or procedure."  *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (citations omitted).  The "agency must examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).  An agency's decision lacks a rational basis, and is

8

therefore arbitrary and capricious, when the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or [the decision] is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Alabama Aircraft Indus., Inc.-Birmingham v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *State Farm*, 463 U.S. at 43).

## ANALYSIS

### *A. Technical Evaluation of Sub-Factor B2*

Mercom argues that the agency unreasonably assigned an "Unacceptable" rating to sub-factor B2 of its proposal for two reasons. First, Mercom asserts that the ten contract references it provided for sub-factor B2 describe work actually performed by Mercom rather than just its technical approach under these contracts. Pl.'s Mot. at 12-18. Second, Mercom claims that the portion of its proposal related to sub-factor B2 adequately demonstrated the depth and breadth of its experience in technical support services and satisfied the requirements of the RFP. *Id.* at 18-23.

In a bid protest, "[t]he evaluation of proposals for their technical excellence or quality is a process that often requires the special expertise of the procurement officials, and thus reviewing courts give greatest deference possible to these determinations." *CRAssociates, Inc. v. United States*, 102 Fed. Cl. 698, 717 (2011) (citing *E.W. Bliss Co. v. United States*, 77 F.3d 445, 449 (Fed. Cir. 1996); *Bannum, Inc. v. United States*, 91 Fed. Cl. 160, 174 (2009)) (internal quotation marks omitted), *aff'd*, 475 Fed. Appx. 341 (Fed. Cir. 2012). The agency need only show that it reached its final decision as "the result of a process which 'consider[ed] the relevant factors' and [wa]s 'within the bounds of reasoned decisionmaking.'" *JWK Int'l Corp. v. United States*, 52 Fed. Cl. 650, 654 n.8 (2002) (quoting *Baltimore Gas & Elec. Co. v. Natural Res. Def. Council, Inc.*, 462 U.S. 87, 105 (1983)), *aff'd*, 56 Fed. Appx. 474 (Fed. Cir. 2003).

The offeror bears "the burden of presenting 'an adequately written proposal'" that satisfies the requirements of the solicitation. *Westech Int'l, Inc. v. United States*, 79 Fed. Cl. 272, 296 (2007) (quoting *United Enter. & Assocs. v. United States*, 70 Fed. Cl. 1, 26 (2006)). Here, the Navy's assignment of an "Unacceptable" rating to sub-factor B2 of Mercom's proposal had a rational basis because Mercom failed to submit satisfactory evidence of qualifying experience related to sub-factor B2. Mercom's proposal does not describe its work under the contracts it cited in sufficient detail to enable the agency to reasonably conclude that Mercom performed all of the work stated and had the requisite depth and breadth of experience to be awarded the contract. The contract references provided by Mercom frame the company's work pursuant to sub-factor B2 hypothetically, *i.e.*, in terms of work that Mercom could perform rather than work it actually did perform. *See, e.g.*, AR 16-393; -399; -404; -409; -414; -419; -424; -429; -433; -439 ("In accordance with individual Delivery Orders, Mercom *may* provide incidental equipment support. . . .") (emphasis added). As the SSEB explained, this conditional and hypothetical language describes Mercom's "technical approach" rather than substantively explaining the services Mercom actually performed under these past contracts. *See* AR 18-869. Without an explanation of Mercom's past experience, the agency could not evaluate the frequency or "multiplicity or variety of programs and/or projects" performed by Mercom within the scope of

sub-factor B2, as required by the RFP. AR 7-289. Thus, it was reasonable to assign Mercom's proposal an "Unacceptable" rating with respect to sub-factor B2 because Mercom failed to satisfy the requirements of the solicitation.

Mercom argues that it used conditional language in its contract references because nine of the ten contracts it cited were IDIQ contracts. *See* Hr'g Tr. 7:1-12 (Feb. 17, 2017); Pl.'s Mot. at 12. An IDIQ contract "provides for an indefinite quantity, within stated limits, of supplies or services during a fixed period." 48 C.F.R. § 16.504(a). IDIQ contracts are used "when the [g]overnment cannot predetermine, above a specified minimum, the precise quantities of supplies or services that the [g]overnment will require during the contract period." 48 C.F.R § 16.504(b). Thus, while Mercom is correct that "the work required by an individual order may vary from another order placed under [an IDIQ] contract," Pl.'s Mot. at 12, a general description of the services that could be provided under the contract does not necessarily represent the types and amounts of work actually performed. Under the cited IDIQ contracts, the government could have ordered performance of any or all of the possible services that Mercom could provide. *See* 48 C.F.R. § 16.504(a) (explaining that the government must order a minimum amount of services as specified in an IDIQ contract, but has the option to order additional services as well). The burden was on Mercom to describe the services it actually provided under the IDIQ contract references to demonstrate the depth and breadth of its experience in technical support services for sub-factor B2. Nonetheless, the actual services ordered and work performed are not evident from the generalized list of potential services Mercom provided. Each of Mercom's contract references provides essentially the same description of technical support services with regard to sub-sub-factors B2.1 and B2.2. *See* AR 16-393 to -94; -399; -404; -409; -414; -419; -424; -429; -433 to -34; -439. As noted by the SSAC, Mercom's repeated description contains merely "generalized statements" and "high-level summaries concerning the types of services that [Mercom] provides," rather than "specific supporting information concerning [Mercom's] experience" in performing the services sought under the solicitation. AR 19-1006. The RFP required specific supporting information so the agency could evaluate the depth and breadth of the offerors' past experience and determine their likelihood of successful contract performance. *See* AR 7-289; 18-869 to -71. Based on the nonspecific references Mercom provided, it was reasonable for the Navy to determine that Mercom did not describe work actually performed under the contract references for sub-factor B2, and therefore did not satisfy the requirements of the solicitation. The Navy's assignment of a rating of "Unacceptable" to sub-factor B2 for Mercom's proposal thus was rational.

*B. Assignment of "Unacceptable" Rating to Mercom's Full Proposal*

Mercom further contends that the agency's assignment of an "Unacceptable" rating to Mercom's full proposal based on the "Unacceptable" rating for sub-factor B2 was unreasonable because it did not follow the terms of the solicitation. *See* Pl.'s Mot. at 24-26. Specifically, Mercom argues that the solicitation stated that a proposal would be rejected for receiving an "Unacceptable" rating for a factor, not just a sub-factor, and that the assignment of an "Unacceptable" rating to factor (B) was unreasonable in light of the "Good" rating assigned to sub-factor B1 and the weighting scheme set forth in the solicitation. *Id.* at 24-25. Mercom believes that this rating approach amounted to an "automatic rejection" of its proposal without due consideration given to factor (B) as a whole. *Id.* at 26.

As Mercom notes, "[i]t is a fundamental tenet of procurement law that proposals must be evaluated in accordance with the terms of the solicitation." *Red River Holdings, LLC v. United States*, 87 Fed. Cl. 768, 786 (2009) (quoting *AshBritt, Inc. v. United States*, 87 Fed. Cl. 344, 374 (2009), *opinion clarified*, 87 Fed. Cl. 654 (2009)). An agency's failure to follow the terms of its solicitation in evaluating and selecting offerors is arbitrary and capricious. *See Q Integrated Cos. v. United States*, 126 Fed. Cl. 124, 142-43 (2016), *appeal dismissed*, No. 2016-1991 (Fed. Cir. June 2, 2016); *Hunt Bldg. Co. v. United States*, 61 Fed. Cl. 243, 273 (2004) (citing *Banknote Corp. of Am. v. United States*, 365 F.3d 1345, 1351 (Fed. Cir. 2004); *LaBarge Prod., Inc. v. West*, 46 F.3d 1547, 1555 (Fed. Cir. 1995)), *opinion modified*, 63 Fed. Cl. 141 (2004).

Contrary to Mercom's assertions, however, the Navy followed the terms of the solicitation in assigning an "Unacceptable" rating to factor (B) of Mercom's proposal, and consequently to the proposal as a whole. Although the RFP did state that sub-factor B1 was "more important" than sub-factor B2, AR 7-289, nowhere does it indicate that a rating better than "Unacceptable" for sub-factor B1 would always outweigh an "Unacceptable" rating for sub-factor B2. As the government explains, "[t]he fact that [s]ub[-]factor B1 is more important than [s]ub[-]factor B2 under the solicitation is relevant only in the situation in which an offeror's proposal is otherwise acceptable." Def.'s Cross-Mot. for Judgment Upon the Administrative Record and Resp. to Pl.'s Mot. for Judgment Upon the Administrative Record ("Def.'s Cross-Mot.") at 24, ECF No. 22. Where, as here, the offeror's proposal is partially "Unacceptable," it is reasonable for the agency to deem the whole proposal unacceptable under the terms of the solicitation. An "Unacceptable" rating for either a sub-factor or a factor indicates that the "[p]roposal does not meet [the] requirements" of the RFP and thus is "unawardable." AR 3-101; *see also* AR 8-299 ("Proposals which fail to address the stated requirements will be considered unacceptable."). The solicitation also explicitly states that "OFFERS THAT DO NOT CONFORM TO THE REQUIREMENTS STATED HEREIN MAY BE DETERMINED UNACCEPTABLE AND MAY BE REJECTED WITHOUT FURTHER EVALUATION." AR 7-287. As explained *supra*, Mercom's proposal did not conform to the requirements of the RFP with regard to sub-factor B2 because it failed to provide sufficiently detailed contract references to demonstrate the depth and breadth of Mercom's technical support services experience. For this reason, the combination of significant weaknesses for sub-factor B2 "constitute[d] a deficiency and an 'Unacceptable' adjectival rating" for factor (B) under the terms of the solicitation. AR 19-1006. The Navy's decision to assign an "Unacceptable" rating to factor (B) and reject the proposal as a whole due to the significant weaknesses in sub-factor B2 thus had a rational basis because the solicitation explicitly permitted rejection of proposals that did not conform to its requirements, regardless of whether this failure occurred at the factor or sub-factor level.

In sum, the Navy's decision to assign an "Unacceptable" rating to Mercom's factor (B) proposal, and consequently to deem the entire proposal ineligible for a contract award, was supported by the terms of the solicitation and was not arbitrary and capricious.[8]

---

[8]Because the court has determined that the Navy's evaluations of sub-factor B2, factor (B), and Mercom's proposal as a whole were reasonable and not arbitrary and capricious, it need

## CONCLUSION

For the reasons stated, Mercom's motion for judgment on the administrative record is DENIED and the government's cross-motion for judgment on the administrative record is GRANTED. The clerk is directed to issue final judgment in accord with this disposition.

No costs.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Judge

---

not independently address Mercom's summarizing argument that the agency's best-value determination was flawed by the alleged errors in the evaluation process. *See* Pl.'s Mot. at 26.